LEMMON, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted these proceedings against Rory M. Jones, a member of the Association. The consolidated proceedings are based on complaints by six separate clients.

The Gueringer Complaint

Crystal Gueringer retained respondent to represent her in her divorce. She complained to the Bar Association that respondent collected $350 from her in 1985, but did not file a divorce suit or advise her of the status of the matter. He further failed to return the unearned fee.
Based on this complaint, the Bar Association charged respondent with violating Disciplinary Rules 6-101(A)(3) and 2-110(A)(3) of the Code of Professional Responsibility and Rules 1.3, 1.4, and 1.16(d) of the Rules of Professional Conduct.[1]
After a hearing at which respondent appeared without counsel, the commissioner appointed by this court found that respondent did not perform any legal services to earn the $350 paid to him, but only met periodically with the client to collect his fee.[2] Respondent’s contention that he could not file the petition because his client failed to provide her husband’s address was rejected. Noting that respondent should have returned the fee and his failure to do so adversely affected the client who did not have sufficient funds to employ a new attorney, the commissioner concluded that the specified rules had been violated.
We conclude that the evidence established respondent’s neglect of a legal matter and his failure to refund the unearned fee.

The Aguillard Complaint

During the course of representing Sheila Aguillard in certain litigation in 1985, re- *1377 spondént was served with interrogatories which the client answered. When opposing counsel did not receive the responses because respondent mailed them to the wrong address, a motion to compel was filed. Respondent failed to appear at the hearing on the motion, and the court ordered that answers be filed. When respondent failed to provide the answers to opposing counsel, the court dismissed respondent’s client’s action.
Respondent was charged with neglecting a legal matter entrusted to him in violation of DR 6-101(A)(3) and Rule 1.3. The commissioner concluded that the Bar Association failed to carry its burden of proof of neglect, noting that many attorneys fail to answer interrogatories.
The gravamen of this misconduct was not respondent’s mere failure to provide counsel with answers, but his further ignoring the court order to do so and his subsequently ignoring the motion to dismiss. Respondent’s client suffered injury in that her action was dismissed because of this neglect of a legal matter entrusted to respondent.

The Randall Complaint

Kimberly Randall paid respondent a $250 retainer fee to represent her in a child custody and support matter in 1986. When respondent appeared in court with his client, the judge informed respondent that he was ineligible to practice law because of non-payment of his Bar Association dues.
After discharging respondent, the client complained to the Bar Association that respondent promised to refund the retainer fee and failed to do so. The Bar Association charged respondent with failing to return an unearned fee in violation of DR 2-110(A)(3).
The commissioner concluded that no refund was due in that respondent earned the fee by meeting with Randall on eight or nine occasions and going to court at least once and possibly two times.
Most of respondent’s meetings with the client were to collect installments on the fee. Moreover, respondent’s meetings with the client and his trip to court were of no value whatsoever to the client inasmuch as he was ineligible through his own fault to practice law at the time and made no effort thereafter to be reinstated.
Respondent admitted that a refund was due and testified that he returned $150, but offered no proof. We conclude that respondent did not earn the fee and did not refund any portion of the unearned fee.
In connection with the court appearance in the Randall matter while ineligible because of non-payment of Bar Association dues, respondent was also charged with violating DR 1-102(A)(4) and 3-101(B) by engaging in conduct involving fraud, deceit or misrepresentation and by engaging in the unauthorized practice of law.
Respondent did not pay his Bar Association dues for 1985 and has not paid dues since. As a result he has been ineligible to practice law since July 31, 1985. When respondent appeared in court with Randall on October 13, 1986 and was confronted by the judge concerning the non-payment of dues, he responded that he had paid his 1986 dues, but asserted that there may have been an oversight as to the 1985 dues.
The commissioner found that violation of the Code had been proved, observing that respondent's failure to pay dues since 1985 was indicative of a complete and utter disregard for the rules of the Bar Association.
The determinative issue is not whether respondent paid his dues, but whether he attempted to deceive the court by stating that he had. Relator testified that at the time of the court appearance he could not specifically remember whether he had paid the dues, but responded to the judge as he did based on the belief the dues were probably paid.
It is plausible that a lawyer, when suddenly confronted with an accusation of nonpayment of dues, may not precisely remember whether he made the payment. Although respondent did not thereafter pay the dues, there is no proof that he was sent a notice of non-payment or of ineligibility prior to his statement to the judge or that he knew with certainty at the time of the statement the dues were not paid. However, the record establishes that respon *1378 dent attempted to practice law, after his confrontation with the judge, without paying his dues.[3] We therefore conclude that the charge relating to deceptive conduct with the judge was not proved by clear and convincing evidence, but the charge of unauthorized practice of law was proved.

The Powell Complaint

Respondent received $647 between March 5, 1985 and June 21, 1986 to represent Robbin Powell in an employment discrimination action. The defendant removed the suit to federal court and scheduled Powell’s deposition. When respondent and Powell failed to appear, the court on defendant’s motion ordered respondent to produce Powell at a later scheduled deposition and further ordered respondent and Powell to pay the defendant $750 in expenses and attorney’s fees. The suit was dismissed when respondent failed to pay this amount or to produce Powell for the deposition.
Respondent was charged with neglecting a legal matter entrusted to him, failing to refund the unearned fee to the client, and failing to render appropriate accounting to the client, all in violation of DR 6 — 101(A)(3), DR 2-110(A)(3) and DR 9 — 102(B)(3) respectively.[4]
The commissioner found that respondent’s failure to produce Powell or notify him of the three depositions and his failure to pay $750 to the opponent prompted the federal court to dismiss Powell’s suit. Based on the foregoing, the commissioner concluded that respondent had neglected a legal matter entrusted to him. However, the commissioner decided that the Bar Association had not proved the other charges because the fee was otherwise earned.[5]
The neglect was clearly proved. Furthermore, even if services in another matter were sufficient to justify fees equal to the $647 received by respondent in the discrimination action, respondent did not render any accounting in either matter. Respondent also effectively abandoned his client (allegedly because of non-payment of additional fees) without formally withdrawing from representation or in any way taking measures to assure that his client would not thereby be prejudiced.[6]

The Dugar Complaint

In December of 1985 Ronald Dugar retained respondent in connection with the repossession of his automobile. Dugar paid respondent $100 for legal services and gave him approximately $2,395 to forward to opposing counsel to bring the delinquent payments up to date. The next day respondent forwarded to opposing counsel a cashier’s check in the approximate sum of $1,923. Dugar subsequently gave respondent $346 to make an additional payment, but this amount was never transmitted to the lender’s attorney.
Respondent was charged with violating DR 9-102 by failing to place the client’s funds in a identifiable bank account separate from his own funds and by converting part of the funds to his own use.[7]
Respondent defended on the basis that the money was handled by an attorney with whom respondent shared office space. That attorney testified that he did not know anything about the cashier’s check sent to Dugar’s creditor, that he kept a separate bank account from respondent, and that there was no sharing of cases with respondent or commingling of trust account funds. Additionally, the attorney for the creditor testified that respondent repeatedly advised him the remaining money would be forthcoming.
*1379 The commissioner found that respondent received the money, converted part of the funds to his own use, and intended to pay it back, but had not done so. The commissioner noted that the amount of converted funds, while not large in absolute terms, was significant in the light of Dugar’s financial condition.
The evidence clearly and convincingly establishes that respondent received about $2,741 to make payments on his client's debt and paid only about $1,923. Since respondent failed to account for or refund the remaining $818, he is guilty of commingling this money with his own funds and using the client’s money for his own purposes.

The Murphy Complaint

Veadie Murphy retained respondent in December, 1985 to represent her in a worker's compensation claim, giving him $110 to file suit. Murphy’s complaint asserted that respondent told her he had filed a claim with the Office of Worker’s Compensation (OWC) in Baton Rouge and had charged her for trips to Baton Rouge from New Orleans, but that no claim had actually been filed.
Murphy later filed her claim in proper person. When she received a right to sue letter from OWC, she consulted respondent to file a suit. According to Murphy, respondent subsequently told her that he had filed the suit. He provided her with a copy of a petition for worker’s compensation stamped “Filed February 9th, 9:14 a.m., 1987, Civil District Court”.
Murphy later learned that no suit had been filed. Another attorney eventually filed suit on Murphy’s behalf, and respondent subsequently refunded $110 to the client.
Respondent was charged with neglecting a legal matter entrusted to him, engaging in conduct involving fraud, deceit, and misrepresentation, and engaging in conduct that adversely reflects on a lawyer’s fitness to practice law, all in violation of DR 6-101(A)(3) and DR 1-102(A)(4) and (6).
In his defense respondent asserted that he asked a friend in OWC to personally handle Murphy’s case and that the friend repeatedly assured him he was handling the claim. Respondent further testified that he prepared the suit, personally filed it with the clerk of court, watched the stamping of the petition, and received his stamped copy. Respondent stated that he paid for the filing of the suit and received a receipt, but could not furnish a copy of the receipt.
The commissioner concluded that respondent never filed any forms with OWC and never filed a petition in court. The commissioner further found that the petition furnished to Murphy bore an altered date stamp. This conduct, according to the commissioner, involved fraud, deceit and misrepresentation which prejudiced his client and the profession. The commissioner noted, however, that Murphy was not harmed in this matter in that she retained another attorney to file her claim, but that her principal loss was a loss of faith in the legal system.
We conclude the Bar Association proved by clear and convincing evidence that respondent neglected a legal matter entrusted to him and engaged in deceitful conduct in order to cover up the neglect. This conduct reflected adversely on his fitness to practice law.

Failure to Cooperate

In separate specifications the Bar Association charged respondent with failure to cooperate with the Committee on Professional Responsibility and with conduct in this regard which was prejudicial to the administration of justice, in violation of Rules 8.1(c) and 8.4(d) and (g) of the Rules of Professional Conduct. The Bar Association also charged respondent with failure to honor the subpoenas issued by this court on three separate occasions to appear before counsel for the Committee of Professional Responsibility. The Bar Association contended that such conduct violated DR 1-102(A)(5) and (6) of the Code of Professional Responsibility in that the conduct prejudiced the administration of justice and reflected adversely on respondent’s fitness to practice law.
*1380 Respondent first defended his inaction on the basis that he was a Captain in the ■ United States Air Force. At the commissioner’s hearing, however, respondent asserted that he was never served with a subpoena of this court. Respondent later conceded that he simply ignored all correspondence and subpoenas, stating' he was awaiting the opportunity to come forward and settle all matters with the Committee at one time.
In the face of these contradictory statements the commissioner found the Bar Association proved that respondent failed to cooperate with the Committee, failed to cooperate with the curator, and failed to respond to the subpoenas of this court.
Failure to cooperate in the investigation of alleged misconduct not only prejudices the administration of justice, but also prejudices the attorney’s position, inasmuch as many complaints are handled at the investigatory stage without formal proceedings. The lack of cooperation in this case is more appropriately considered as an aggravating factor in the determination of penalty than as significant separate misconduct because the conduct did not involve deceit or intent to obstruct justice.

Penalty

Respondent was born in 1957 and was admitted to the practice of law in 1984. He was awarded a commission in the Air Force, but had to wait over two years before going on active duty. The misconduct occurred during his interim practice between law school and the service.
Respondent appeared in this court at oral argument and conceded that there was evi-dentiary support for most of the commissioner’s findings. He explained his position, attributing his problems to inexperience, errors in judgment, failure to communicate with his clients and with the Bar Association, and trying to handle too many matters in a quest to provide representation for poor people. He further asserted that he has already suffered for his misconduct in that he had resigned his military commission and had lost Veterans’ benefits. He was granted substantial additional time to file a brief in support of his position, but has never done so.
Most of respondent’s misconduct involved neglecting legal matters entrusted to him and failing to refund unearned fees upon termination of representation. Several clients were thereby injured: Gueringer did not have the funds to hire another attorney to handle her divorce, Aguillard’s and Powell’s suits were dismissed, and Murphy lost faith in the legal system. Respondent also failed to communicate with clients, to use trust accounts, to render accountings, and to take steps to avoid prejudice to the client when he withdrew from representation. The most serious misconduct, however, was respondent’s conversion of Dugar’s funds to his own use and his deception of Murphy with the phony filing stamp.
The commissioner, noting the serious and persistent pattern of misconduct while considering respondent’s youth and inexperience, recommended disbarment.
The guidelines stated in Louisiana State Bar Association v. Hinrichs, 486 So.2d 116, 122 (La.1987), indicate at least a suspension of three years. Respondent was guilty of a high degree of negligence in causing his client’s funds to be retained in violation of the disciplinary rules, and he benefitted from the infractions. While he did not reimburse his clients, the amount of funds involved was relatively small.
Aggravating factors include a pattern of misconduct, multiple offenses, vulnerability of the victims, and indifference to making restitution, especially after he was in a financial position to do so. See Standards for Imposing Lawyer Sanctions § 9.22 (1986). Respondent’s attitude toward restitution, especially when earning the salary of an Air Force officer, was especially damaging.
The only mitigating circumstance was respondent’s inexperience in the practice of law. See Standards, supra, § 9.32. However, respondent has also suffered from the loss of his military commission.
We conclude that a suspension of three years, with readmission conditioned upon restitution, will adequately serve to protect *1381 the public, the legal system, and the profession, which is the primary purpose of lawyer discipline. Louisiana State Bar Association v. O’Halloran, 412 So.2d 523 (La.1982).

Decree

It is ordered that Rory M. Jones be suspended from the practice of law for three years from the date of finality of this judgment, with readmission conditioned upon proof of restitution. Readmission shall be governed by the disciplinary rules in effect at the time that the period of suspension expired. All costs are assessed to respondent.

. The Code of Professional Responsibility was replaced by the Rules of Professional Conduct, effective January 1, 1987. The violations alleged in these proceedings, except failure to cooperate with the Committee, occurred before the effective date of the new Rules.
DR 6—101(A)(3) prohibits a lawyer from neglecting a legal matter entrusted to him. DR 2-110(A)(3) requires a lawyer who withdraws from employment to refund promptly any advanced fee that has not been earned.

. Respondent was in military service when the first specifications were filed. During the course of the investigation this court appointed several curators and respondent employed several attorneys. At the commissioner’s hearing, however, respondent relieved his counsel and his curator of their duties and consented to go forward with the hearing.
At the close of the hearing the commissioner granted respondent twenty days within which to present additional evidence, but respondent failed to do so or to request an extension.

. The Murphy complaint involved conduct which occurred in 1987.

. Respondent was also charged with violating DR 1—102(A)(5) and (6), which prohibit a lawyer from engaging in conduct that is prejudicial to the administration of justice or conduct that adversely reflects on his fitness to practice law.

. The commissioner found that respondent had represented Powell in criminal matters in which the fees and costs justified a charge at least equal to the $647 fee received by respondent.

. Respondent was not formally charged with violating DR 2-110(A)(2).

. Respondent was also charged with violating the general provisions of DR 1-102(A)(4), (5) and (6).